**SIDEBOTTOM v. AMERICAN SURETY CO. OF NEW YORK, Inc.**

**No. 8975.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1942.

John E. Shepard, of Covington, Ky. (John E. Shepard, of Covington, Ky., and L. M. Ackman, of Williamston, Ky., on the brief), for appellant.

Frank V. Benton, Jr., of Newport, Ky. (Benton & Benton, of Newport, Ky., on the brief), for appellee.

Before HICKS, HAMILTON and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

For many years prior to December 17, 1939, decedent, P. L. Sidebottom, operated an automobile sales agency and repair shop on the east side of North Main Street, Williamstown, Kentucky.

On March 9, 1939, appellee issued to him a "Garage Liability Policy. * * *" The policy continued in force until March 9, 1940. Meanwhile, on December 17, 1939, one of his automobiles, while being operated in reverse on his premises, struck and injured Elizabeth Bracht. She thereafter brought suit against him in a Kentucky court for damages for her injuries. Whereupon, appellee filed its complaint in the District Court for declaratory relief. It sought a declaratory judgment that its insurance policy did not cover the claim and suit of Miss Bracht. The court granted the relief sought, hence this appeal.

The court made findings of fact, about which there is no controversy.

Sidebottom maintained on his premises a garage some 80 feet long which set back approximately 18 feet from the sidewalk. There were abandoned gas pumps between the building and walk. South of the building and extending some 81 feet to Licking Street he maintained a gravel parking lot with a concrete paved area along Main Street. Approximately 40 feet south of the

south line of the building and set back about 12 feet from the sidewalk along Main Street were some gas pumps. North of the garage was a church fronting on Main Street, the approach to which was approximately 55 feet from the garage.

The policy covered liability for bodily injury and property damages arising out of insured's "Operations" under "Division 1" of the policy, as an "Automobile Dealer" and "Automobile Repair Shop" on the described premises. The policy does not indicate, and no contention is made, that deceased took out insurance on operations coming under "Division 2" for "Automobile Storage Garage" or "Automobile Service Station"; or under "Division 3" for "Private Livery—Persons." Operations under Division 1 were defined in the policy in the following clause: "The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

Under the "Exclusions" the policy was expressly stated "not to apply: (a) under divisions 1 and 2 of the Definition of Operations, to any automobile while used for carrying persons or property of others for a consideration. * * *"

The court found that in addition to the operation of the agency and shop, appellant's intestate "* * * occasionally transported persons from and to various points in the community either gratuitously or for hire. He did not have a taxi or livery license, and did not hold himself out or profess to be in that business." It further found that one of the persons whom Sidebottom had transported for hire over a number of years was J. B. C. Conrad; that on December 17, 1939, the date of the accident to Miss Bracht, decedent had furnished transportation to Conrad and wife for which he received no compensation. The circumstances surrounding this particular transportation are set forth in Finding No. 7, to wit: "7. On the occasion of the accident the insured's car, in response to a call from Mr. Conrad, left a point where it was parked near the abandoned gasoline pumps in front of the office of the garage, had called at his home at the other end of town from the garage and had brought Mr. Conrad and his wife to church in the immediate vicinity of the garage. After stopping his car at a point in the street between the north line of the garage building and the church, the driver assisted Mr. and Mrs. Conrad to alight from the car and leaving the car standing, went into the garage and after some few minutes came out, got in the car to return it to a parking location south of the garage building. In this operation he backed the car something like eighty or more feet in front of the garage building and then an additional distance of approximately 15½ feet and at this point turned in off the street across the sidewalk and was ten feet into the paved area in front of the parking lot when the defendant, Elizabeth Bracht, was struck and injured. This was at a point approximately seventy feet south of the point from which the machine was first moved on the northward bound trip for Mr. and Mrs. Conrad, and approximately one hundred feet south of the point at which the Conrads left the car."

We are content with the finding that the transportation of Conrad and wife was for compensation, but the court concluded as a matter of law that "the ultimate return of the hired automobile to a parking lot on the property of the defendant Sidebottom after the passengers had alighted, was a part of the commercial transaction of hauling passengers for hire * * *" and that "Exclusion (a)" was applicable.

In the absence of a decision by a Kentucky state court supporting this conclusion, we are constrained to disagree. Maryland Cas. Co. v. Cassetty, 6 Cir., 119 F.2d 602. The language of Exclusion (a) is plain and simple. It excluded liability for the operation of the automobile while it was being used to convey Conrad and wife but this service was terminated when the Conrads were discharged, and there is no ground for withdrawing the coverage of the policy from the ensuing operation of the automobile. It was left standing on the street almost, if not quite, in front of the garage while the driver visited the garage itself. The driver later backed it onto the premises and the execution of this very common and ordinary maneuver was wholly within his judgment. He might, within his discretion, have backed the car to the point from which

it was driven near the abandoned pumps, or to any other suitable location, or even have gone on another trip with it. The backing operation had no connection with the trip for hire.

The judgment appealed from is reversed and the case is remanded with directions to dismiss the petition.